UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOSHUA BOLTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 7:22-cv-14-GMB |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Joshua Boltz filed an application for disability insurance benefits ("DIB") with an alleged disability onset date of August 28, 2019. Boltz's application was denied at the initial administrative level on February 5, 2020, and upon reconsideration on July 20, 2020. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a telephonic hearing on January 7, 2021 and denied Boltz's claim on February 18, 2021. Boltz requested review of the ALJ's decision by the Appeals Council, which declined review on November 10, 2021. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of November 10, 2021.

Boltz's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73,

the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 11. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence."

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or supplemental security income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Boltz bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. RELEVANT FACTUAL BACKGROUND

Boltz was born on February 10, 1985, and he was 34 years old on the disability onset date. R. 232. He has a high school education and specialized job training in welding and computers. R. 263. He previously worked as a materials handler, scaler, motor vehicle assembler, jailer, and furnace keeper. R. 294–301; *see* R. 38–39. His primary complaints are pain in his knees and back, as well as anxiety, paranoia, and anger issues. R. 40, 44–46. In his disability report, Boltz alleged that he is unable to work because of "bipolar disorder, impulse control disorder, anxiety, mood disorder, back, migraine headaches, right ankle, sleep apnea, and both knees." R. 262.

At the hearing, Boltz testified that he lives with his mother. R. 46. He tries to help with indoor chores, including making a sandwich and doing the dishes, but his physical impairments restrict many of his activities. R. 46. Boltz dresses himself

and independently cares for his personal needs. R. 47.  He is able to drive, but rarely does. R. 47.  Boltz testified that he does not like to be around crowds and does not go to the grocery store or to church. R. 50.  He does not have friends who visit him and prefers to be alone. R. 50.  He said he does not have friends because he "snaps" at them due to his anger-management issues. R. 51.

Boltz testified that he regularly sees a mental health professional. R. 45, 49–50.  His treating psychiatrist is Dr. Islam and Boltz visits him about every third month. R. 50.  Boltz testified that he has not been hospitalized for any mental health issue or arrested for his anger issues. R. 45.  He explained that he "pretty much don't move out of the room." R. 45.  Boltz has taken different medications for his mental health, but testified that the medications have had limited to no success and many side effects. R. 45–46.

Boltz's medical records show that he received mental health treatment at the United States Department of Veterans Affairs from October 2016 through at least November 2020.  Boltz consistently reported feeling irritable at his appointments, but Dr. Islam generally found his mentation normal, his demeanor cooperative, and that he was alert and oriented. R. 1102, 1169, 1338, 1406.  Dr. Islam also reported that Boltz displayed pressured speech, restlessness/hyperactivity, dysphoric mood, and anxious affect, but he repeatedly concluded that Boltz's thought process was logical, his abstract thinking was normal, and his judgment and insight were intact.

R. 1103–04, 1169–70, 1338–39, 1406–07. Dr. Islam never noted any evidence of psychotic symptoms and Boltz never reported any hallucinations, paranoid ideation, or delusions. R. 1104, 1170, 1338, 1406.

Applying the sequential evaluation process, the ALJ found that Boltz has not engaged in substantial gainful activity since his alleged onset date of August 18, 2019. R. 18. At step two, the ALJ found that Boltz suffered from the following severe impairments: degenerative disc disease, bilateral knee chondromalacia and Baker's cyst, bipolar disorder, depression, generalized anxiety disorder, and impulse control disorder. R. 18–19. The ALJ found that these medically determinable impairments significantly limit Boltz's ability to perform basic work activities. R. 18. At step three, the ALJ found that Boltz did not have an impairment or combination of impairments meeting or medically equal to the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19–21.

Before proceeding to step four, the ALJ determined that Boltz had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following non-exertional limitations:

> He can occasionally climb, crouch, kneel, and crawl; can frequently balance and stoop; can constantly reach, handle, finger, and feel; can understand and carry out simple instructions; can maintain attention and concentration for two-hour periods at a time; can perform jobs that do not require interaction with the general public; can have occasional interaction with coworkers; can make simple work related decisions; and can adapt to routine and infrequent workplace changes.

R. 24. The ALJ relied on a vocational expert's testimony to find that there are jobs existing in significant numbers in the national economy that Boltz can perform. R. 26–27. Thus, at step five of the five-step sequential process, the ALJ found that Boltz was not disabled within the meaning of the Social Security Act from August 28, 2019, the alleged onset date, through the date of the decision. R. 28.

## IV. DISCUSSION

Boltz makes three arguments in favor of remand: (1) the ALJ did not follow the proper legal standard or support with substantial evidence her findings that the non-examining psychologists' opinions are persuasive, (2) the ALJ's decision that Boltz had only moderate mental limitations is not supported by substantial evidence, and (3) the ALJ did not consider the "vocationally relevant limitation of missing work more than once a month." Doc. 12 at 2, 5–15. These arguments fail for the reasons discussed below.

### A. Non-Examining Psychologists

Boltz contends that the ALJ erred when she accepted the opinions[2] of consulting psychologists Robert Bare, Ph.D. and Joanna Koulianos, Ph.D as persuasive. Doc. 12 at 5–8. Specifically, Boltz contends that their opinions were entitled to little weight as non-examining physicians. Doc. 12 at 6–8. He also argues

---

[2] As discussed in more detail below, both consultants found that Boltz's mental impairments resulted in moderate limitations in the four functional areas. R. 119−37, 138−54.

that neither had access to his complete medical record, so their opinions should have been given less weight. Doc. 12 at 5–6.

Boltz relies on an obsolete hierarchy of medical opinions to argue that the ALJ erred in giving the opinions any weight at all. Before March 27, 2017, the opinions of examining physicians were given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 416.927(c)(1–5). Under the new regulations, however, an ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* Instead, the new regulation provides several factors informing the ALJ's decision on the weight to give a claimant's proffered medical opinions. Those factors include the supportability of the medical opinion, its consistency with other record evidence, the physician's relationship with the claimant, the physician's specialty, and other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability.[3] 20 C.F.R. § 404.1520c(c)(1)–(5). In *Harner v.*

---

[3] The new regulations also change the standards an ALJ applies when articulating her assessment of medical source opinions. First, an ALJ does not need to assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Second, the ALJ does not have to "give good reasons" for the weight she assigns to treating source opinions. *Compare* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."), *with* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific

*Social Security Administration*, 38 F.4th 892, 897–98 (11th Cir. June 27, 2022), the Eleventh Circuit confirmed that these new regulations eliminate the treating physician rule. Here, the new regulations apply because Boltz filed his claim on November 5, 2019. *See* 20 C.F.R. § 404.1520c(a) (stating that the new regulations apply to "claims filed . . . on or after March 27, 2017).

Additionally, the consulting psychologists' inability to review Boltz's entire medical record does not determine the weight of their opinions. "An ALJ may rely on an opinion of state medical consultants even when the consultant did not review all medical records." *Jefferson v. Comm'r of Soc. Sec.*, 2019 WL 141317 (M.D. Fla. March 29, 2019) (citing *Putman v. Comm'r of Soc. Sec.*, 705 F. App'x 929, 934 (11th Cir. 2017); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013)). This is especially true here where the records they did not review are substantially similar to those they did review. *See* R. 1169–70, 1337–38, 1405–07.

And while it may have been improper for the ALJ to rely solely on the consulting doctors' opinions, she did not. She relied on other evidence, including Boltz's mental status examinations, the treatment record, and the hearing testimony. R. 19–20. She also noted that "no examining or treating source has reported that the

---

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

claimant has an impairment that meets the criteria of a listed impairment." R. 19–20. This argument does not require remand.

## B. Moderate Mental Limitations

The ALJ determined that Boltz's severe mental impairments of bipolar disorder, depression, generalized anxiety disorder, and impulse control disorder caused only moderate limitations in the four areas of mental functioning. Boltz argues that this decision is not supported by substantial evidence. Doc. 12 at 9–13. To determine whether the severity of a claimant's mental impairments meets or is medically equal to the criteria of Listings 12.04 (pertaining to depressive, bipolar, and related disorders), 12.06 (pertaining to anxiety and obsessive-compulsive disorders), and 12.11 (pertaining to neurodevelopmental disorders), the ALJ assesses the claimant's abilities in four broad functional areas known as "Paragraph B" criteria. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019). These four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage himself. 20 C.F.R. § 404.1520a(c)(3). The ALJ assigns a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning. 20 C.F.R. § 404.1520a(c)(4). The ALJ should explain the results of this inquiry in her findings and conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005). For a listing-level mental impairment, the ALJ must find

that a claimant has an "extreme" limitation in one of the four functional areas or a "marked" limitation in two. 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). The ALJ uses all "relevant medical and non-medical evidence" in evaluating a claimant's mental disorder, including information about his daily activities at home and in the community. *Id*. § 12.00(F)(3)(a)–(b).

Here, the ALJ found that Boltz did not satisfy paragraph B because he had only moderate limitations in all four functional areas.[4] Boltz argues that the ALJ should have found marked limitations in all four areas. Doc. 12 at 9–12. Before reviewing each functional area, the court notes that a rating of "moderate" means a claimant's "functioning in th[at] area independently, appropriately, effectively, and on a sustained basis is fair[,]" while a rating of "marked" means the functioning in that area is "seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c)–(d). Given the broad terms used to define them, assessing the degree of separation between a "moderate" and a "marked" limitation—deciding "fair" versus "seriously limited"—necessarily involves some measure of judgment, and the court cannot reweigh the evidence or substitute its judgment for the ALJ's. *Winschel*, 631 F.3d at 1178. Moreover, only substantial evidence must support the ALJ's decision, even if a preponderance of the evidence does not. *Barnes v. Sullivan*, 932 F.2d 1356, 1358

---

[4] The ALJ also determined that Boltz did not satisfy the paragraph C criteria (R. 20–21), a finding Boltz does not challenge.

(11th Cir. 1991). "The question is not . . . whether ALJ could have [reached some other conclusion], but whether the ALJ was clearly wrong [not to]." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

### 1. *Understanding, Remembering, and Applying Information*

Substantial evidence supports the ALJ's finding that Boltz has a moderate limitation in his ability to understand, remember, or apply information. This functional area relates to Boltz's "abilities to learn, recall, and use information to perform work activities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(1). Examples of relevant tasks include understanding and learning terms, instructions, and procedures; following one-or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. *Id*. As the ALJ explained, the record showed that Boltz could do simple household chores, including making simple foods and doing the dishes, even though he was limited by his physical impairments. R. 19, 21. And the medical record showed that Boltz's mental status examinations were grossly normal and his presentation stable. R. 19. For instance, Dr. Islam, his treating psychiatrist, noted in March and November 2020 that his thought process was logical, his judgment and insight were intact, his abstract thinking was normal, and

he had no evidence of psychotic symptoms. R. 1336−39, 1405−07.

### 2. *Interacting with Others*

Next, substantial evidence supports the ALJ's determination that Boltz has a moderate limitation in his ability to interact with others. This domain relates to Boltz's ability to relate to and work with supervisors, co-workers, and the public. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(2). Examples include cooperating with others; asking for help when needed; handling conflicts with others; stating his own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. *Id*. Although Boltz reported anxiety, problems interacting with others, temper control, and paranoia, the ALJ correctly noted that he has not been arrested due to his problems with anger or hospitalized for inpatient psychiatric treatment. R. 20, 22. And the relevant treatment records reflect that Boltz was stable and his examinations were within normal limits. In fact, in March and November 2020, his treating psychiatrist noted that Boltz did not have any evidence of psychotic symptoms, nor did he report any hallucinations, paranoid ideations, or delusions. R. 1338, 1406.

### 3. *Concentrating, Persisting, and Maintaining Pace*

Substantial evidence likewise supports the finding that Boltz has a moderate

limitation in his ability to concentrate, persist, and maintain pace. This domain relates to Boltz's "abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(3). Although Boltz reported some difficulties with daily tasks, the ALJ explained that he also reported activities that indicate sustained attention, such as preparing simple foods and doing some of the dishes. R. 20. In addition, his treating psychiatrist recorded his attention as "alert" and his cognition as oriented to person, place, and time in both March and November 2020. R. 1336−39, 1405−07.

### 4. *Adapting or Managing Oneself*

Finally, there is substantial evidence in the record to support the ALJ's determination that Boltz has a moderate limitation in his ability to adapt and manage himself. The domain relates to a claimant's ability to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(4). Examples of relevant tasks include responding to demands, adapting to changes, managing psychologically based symptoms, distinguishing between acceptable and unacceptable work performance, setting realistic goals, making plans independently of others, maintaining personal hygiene and attire appropriate to a work setting, and being aware of normal hazards and taking appropriate precautions. *Id*. Again, the ALJ noted Boltz's testimony that he could complete his hygiene and grooming tasks independently. And treatment notes from

his treating psychiatrist in March and November 2020 noted appropriate causal dress at his appointments. R. 1337, 1406. And although Boltz reported that he had problems controlling his anger, the medical evidence did not show that "he demonstrated any mood disregulation such as angry outbursts or that he seemed unable to control his behavior." R. 20. As referenced above, Boltz has not been arrested due to his problems with anger or hospitalized for inpatient psychiatric treatment. R. 21.

Accordingly, the record evidence that the ALJ discussed during her paragraph B analysis and while assessing Boltz's medical records constitutes substantial evidence supporting her finding that Boltz did not have more than moderate limitations in the four functional areas.

**C.     Missing Work**

Finally, Boltz argues that the ALJ should have considered the frequency of his medical appointments in formulating his RFC. Doc. 12 at 14–15. Specifically, Boltz points to the vocational expert's testimony that a need to miss two days of work per month would be preclusive and the record evidence he attended 21 medical appointments and 10 physical therapy appointments in 2019 and 15 medical appointments in 2020. This argument is unpersuasive.

In *Cherkaoui v. Commissioner of Social Security*, 678 F. App'x 902, 904 (11th Cir. 2017), the Eleventh Circuit was "unpersuaded by Cherkaoui's argument that the

16

excessive number of medical appointments she attended rendered her disabled." Specifically, the court held that the question of "whether the number of medical appointments affects [the claimant's] ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Id.* The *Cherkaoui* court also noted that "nothing in the record indicates that [the claimant] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work." *Id.*

Similarly, there is nothing in the record here to support Boltz's allegation that he was required to miss at least two days of work per month for medical appointments or that those appointments could be scheduled only during working hours. *See Palencia v. Saul*, 2020 WL 5742981, at *8 (M.D. Fla. Sept. 25, 2020) ("Additionally, as the Commissioner contends, and as the record supports, Plaintiff was not required, nor would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work."). The court also cannot endorse Boltz's speculation about future absences based solely on his "general medical history." *See Rivero v. Comm'r of Soc. Sec.*, 2018 WL 1466387, at *6 (M.D. Fla. Mar. 26, 2018) (finding that the claimant's "alleged need to be absent from work at least two and one half days per month is speculation"

17

because that "argument was based on the analysis of her general medical history"). Boltz's argument also ignores his hearing testimony that he saw his primary doctor only once every three months. R. 50. For these reasons, this argument does not mandate remand to the ALJ.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on December 15, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE